1

2

3

4

5

6          IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
7                    IN AND FOR SNOHOMISH COUNTY

8

9    MEGA SEATTLE, LLC, a Washington limited
     liability company,
10
                                    Plaintiff,        NO. 15-2-07047-7
11
           v.                                         **FIRST AMENDED COMPLAINT
                                                      FOR:**
12
                                                      **(1)    VIOLATIONS OF THE
13   LT REAL ESTATE GROUP, LLC, a Nevada                       WASHINGTON FRANCHISE
     limited liability company; DAVID WU, an                  INVESTMENT
14   individual; LV DNS DEVELOPMENT, LLC, a                    PROTECTION ACT;**
     Nevada limited liability company; SAM CHEN,      **(2)    VIOLATIONS OF THE
15   an individual; HIG MANAGEMENT, LLC, a                     WASHINGTON CONSUMER
     Nevada limited liability company; BOBBY                   PROTECTION ACT;**
16   SABAS a/k/a ROBERT SABAS a/k/a BOB                **(3)    BREACH OF CONTRACT;**
     SABAS a/k/a ROBERTO SABAS, an individual;         **(4)    BREACH OF CONTRACT;**
17   LEON WU, an individual; and YOLANDA WU,           **(5)    BREACH OF CONTRACT;**
     an individual; and DOES 1-10 inclusive,                   **AND**
18                                                     **(6)    FRAUD**
                                    Defendants.
19

20

21

22

23

24

25
     First Amended Complaint for Damages        Harbor Law PLLC
     - 1                                         119 Union Avenue, Suite B
                                                 Snohomish, WA 98290
                                                 Phone: 425-332-2046
                                                 Fax: 425-321-0344

Plaintiff, MEGA SEATTLE, LLC ("Mega" or "Plaintiff") alleges as follows:

## I.   FACTUAL OVERVIEW

1.       This action arises out of contracts for the franchise of a "Little Tokyo" restaurant.  Plaintiff paid $160,000.00 to Defendants[1] for the right to operate the Little Tokyo franchise at the Seattle Premium Outlets in Tulalip, Washington (the "Restaurant") for a ten-year term.  However, after receiving Plaintiff's funds, Defendants refused to turnover the Restaurant.  As of the date of this First Amended Complaint, Defendants continue to retain the Restaurant and Plaintiff's $160,000.00 for their own benefit.  The only explanation provided to Plaintiff by Defendants is that Defendants promised the Restaurant to another franchisee. Defendants claim that the alleged double-commitment was unintentional but, at the same time, refuse to return Plaintiff's $160,000.00.

## II.   JURISDICTION AND VENUE

2.       This Court has personal jurisdiction over Defendants, all of whom have conducted business activities in and directed to Washington, are primary participants in tortious acts in and directed to Washington, and owned, used and/or possessed real and personal property in Washington.  Jurisdiction over Defendants is also proper under RCW 19.100.160.

3.       Venue is proper in this Court in that a substantial part of the events or omissions giving rise to the claims pled herein occurred in Snohomish County, Plaintiff seeks damages for personal injury or damage to personal property in Snohomish County, and its causes of action arose in Snohomish County.

---

[1] The term "Defendants" is defined in Paragraph 8(f) and refers to collectively all of the defendants named in the complaint, including DOES 1-10, inclusive.

First Amended Complaint for Damages
- 2

Harbor Law PLLC
119 Union Avenue, Suite B
Snohomish, WA 98290
Phone: 425-332-2046
Fax: 425-321-0344

### III.   PARTIES

4.      Plaintiff is, and at all relevant times was, a Washington limited liability company, with its principal place of business in Bothell, Snohomish County, Washington. Plaintiff was established for the purpose of, among other things, operating the Restaurant.

5.      Plaintiff is informed and believes and based thereon alleges that Defendant HIG MANAGEMENT, LLC ("HIG Management") is, and at all relevant times was, a Nevada limited liability company doing business in Tulalip, Snohomish County, Washington.  As further described herein, the franchise agreement in this case was entered into between Plaintiff and HIG Management.  Plaintiff is informed and believes and based thereon alleges that HIG Management effectively controls Defendants LT REAL ESTATE GROUP, LLC ("LT Real Estate") and LV DNS Development, LLC ("LV DNS").

6.      Plaintiff is informed and believes, and based thereon alleges, that LT Real Estate is, and at all relevant times was, a Nevada limited liability company doing business in Tulalip, Snohomish County, Washington.  As further described herein, LT Real Estate had entered into a written agreement with Plaintiff to sublease the space for the Restaurant to Plaintiff.  Plaintiff is informed and believes and based thereon alleges that LT Real Estate effectively controls LV DNS and HIG Management.

7.      Plaintiff is informed and believes, and based thereon alleges, that LV DNS is, and at all relevant times was, a Nevada limited liability company doing business in Tulalip, Snohomish County, Washington.  As further described herein, although LV DNS was not a signatory to any of the contracts that are the subject of this complaint, Plaintiff was instructed by HIG Management and Defendant SAM CHEN ("Sam Chen") to make the payments under the Purchase Agreement and Payment Schedule, as defined in paragraph 10 herein, to LV DNS.  Plaintiff is informed and believes and based thereon alleges that LV DNS effectively

First Amended Complaint for Damages
- 3

Harbor Law PLLC
119 Union Avenue, Suite B
Snohomish, WA 98290
Phone: 425-332-2046
Fax: 425-321-0344

controls LT Real Estate and HIG Management.  HIG Management, LT Real Estate and LV DNS are hereinafter collectively referred to as the "Corporate Defendants."

8.     The following defendants are or were at relevant times, officers of and/or persons in act of control of the activities of the Corporate Defendants.  At all relevant times, they were "persons" as defined by RCW 19.100.010(13).

a.     Plaintiff is informed and believes, and based thereon alleges, that Defendant DAVID WU ("David Wu") is the managing member of LT Real Estate and LV DNS and is a person in act of control of the activities of HIG Management.  Plaintiff is informed and believes, and based thereon alleges, that David Wu is an individual residing in Las Vegas, Nevada doing business in Tulalip, Snohomish County, Washington.

b.     Plaintiff is informed and believes and based thereon alleges that Sam Chen is, and at all relevant times was, a managing member of LV DNS and a person in act of control of the activities of LT Real Estate and HIG Management.  Plaintiff is informed and believes, and based thereon alleges, that Sam Chen is an individual residing in Las Vegas, Nevada doing business in Tulalip, Snohomish County, Washington.

c.     Plaintiff is informed and believes and based thereon alleges that Defendant BOBBY SABAS a/k/a Robert Sabas a/k/a Bob Sabas a/k/a Roberto Sabas ("Bobby Sabas") is, and at all relevant times was, a managing member of HIG Management and a person in act of control of the activities of LT Real Estate and LV DNS.  Plaintiff is informed and believes, and based thereon alleges, that Bobby Sabas is an individual residing in Las Vegas, Nevada doing business in Tulalip, Snohomish County, Washington.

d.     Plaintiff is informed and believes and based thereon alleges that Defendant LEON WU ("Leon Wu") is, and at all relevant times was, a managing member of HIG Management and a person in act of control of the activities of LT Real Estate and LV

First Amended Complaint for Damages
- 4

Harbor Law PLLC
119 Union Avenue, Suite B
Snohomish, WA 98290
Phone: 425-332-2046
Fax: 425-321-0344

DNS.  Plaintiff is informed and believes, and based thereon alleges, that Leon Wu is an individual residing in Las Vegas, Nevada doing business in Tulalip, Snohomish County, Washington.

e.   Plaintiff is informed and believes and based thereon alleges that Defendant YOLANDA WU ("Yolanda Wu") is, and at all relevant times was, a managing member of HIG Management and a person in act of control of the activities of LT Real Estate and LV DNS.  Plaintiff is informed and believes, and based thereon alleges, that Yolanda Wu is an individual residing in Las Vegas, Nevada doing business in Tulalip, Snohomish County, Washington.

f.   Plaintiff is unaware of the true names and capacities of the defendants sued herein as Does 1 through 10 inclusive (the "Doe Defendants").  Plaintiff will amend this complaint to state their true names and capacities when ascertained.  Plaintiff is informed and believes, and based thereon alleges, that each of the Doe Defendants are in some manner responsible for the damages alleged herein. LT Real Estate, LV DNS, HIG Management, David Wu, Leon Wu, Yolanda Wu, Sam Chen, Bobby Sabas, and the Doe Defendants are hereinafter collectively referred to as "Defendants."

## IV.   ALTER EGO ALLEGATIONS

9.   Plaintiff is informed and believes, and based thereon alleges, that there exists, and at all material times there existed, a unity of interest and ownership between Defendants such that any individuality and separateness between them has ceased to exist in that:

a.   Defendants intentionally used the corporate form to violate or to evade their duties under the agreements that are the subject of this lawsuit and under the laws of this State, including, but not limited to the Washington Franchise Investment Act, RCW 19.100.010 et seq. and Washington Consumer Protection Act, RCW 19.86 et seq.

First Amended Complaint for Damages
- 5

Harbor Law PLLC
119 Union Avenue, Suite B
Snohomish, WA 98290
Phone: 425-332-2046
Fax: 425-321-0344

b.     Defendants used the other's assets for their own purposes;

c.     Defendants held themselves out as liable for each other's debts, and in fact, have paid each other's debts and obligations;

d.     Defendants share the same offices, employees, officers and directors;

e.     Defendants disregarded the corporate formalities;

f.     Defendants failed to maintain an identity and existence separate and distinct from each other.  Examples include:

i.   Defendants send correspondence using the letterhead of other Defendants;

ii.  Defendants do not maintain separate email addresses, but share email addresses, for example email addresses ending with @higmgt.com;

iii. Defendants direct contractual payments to be made to other Defendants who were not parties to the underlying contracts;

iv.  Adherence to the fiction of the separate legal existence of each Defendant from the other would permit an abuse of the corporate privilege and promote injustice; and

v.   The Corporate Defendants are so inadequately capitalized that it manifests a fraudulent intent.

## V.     THE LITTLE TOKYO RESTAURANT FRANCHISE AND THE PURCHASE AGREEMENT

10.     David Wu at all relevant times was and is an owner of multiple franchises of food court restaurants throughout the country.  In or around March 2014, David Wu informed Plaintiff that he was planning to open a Little Tokyo franchise restaurant in the food court of the Seattle Premium Outlets in Tulalip, Washington. David Wu offered to build and franchise a

First Amended Complaint for Damages
- 6

Harbor Law PLLC
119 Union Avenue, Suite B
Snohomish, WA 98290
Phone: 425-332-2046
Fax: 425-321-0344

turnkey Little Tokyo restaurant to Plaintiff in exchange for $315,000.00 (the "Purchase Agreement") plus a monthly franchise fee for a ten-year period.

    a.   Plaintiff verbally agreed to the Purchase Agreement.

    b.   On July 15, 2014, Plaintiff received a document entitled "Payment Schedule" that outlined how the $315,000.00 purchase price was to be paid:

        i.   "$60,000.00 security deposit due immediately";

        ii.   "$100,000.00 due on the completion of Sublease & License agreements";

        iii.   "155,000.00 due upon obtaining Permit for Construction."

    c.   The Payment Schedule is attached as **Exhibit A**.

## VI.    PLAINTIFF PAYS $60,000.00 TO LV DNS

11.    Plaintiff began corresponding with Sam Chen, who Plaintiff understood to be Sam Wu's employee.  Sam Chen corresponded with Plaintiff using the email address sam@higmgt.com.

12.    Sam Chen instructed Plaintiff to make the payments under the Payment Schedule to LV DNS.

13.    On July 18, 2014, Plaintiff paid the $60,000.00 security deposit to LV DNS as requested by Sam Chen.

## VII.    THE SUBLEASE AGREEMENT WITH LT REAL ESTATE

14.    On or around September 24, 2014, Plaintiff entered into a Sublease Agreement (the "Sublease") with LT Real Estate.  The Sublease is attached as **Exhibit B**.  The Sublease provides that, among other things, Plaintiff would sublease from LT Real Estate Space 0381C (the "Premises"), where the Little Tokyo restaurant was to be located.

First Amended Complaint for Damages
- 7

Harbor Law PLLC
119 Union Avenue, Suite B
Snohomish, WA 98290
Phone: 425-332-2046
Fax: 425-321-0344

15.     The Sublease attached a document referred to as the Overlease, which was the master lease between LT Real Estate and CPG Partners, LP, the owner of the Seattle Premium Outlets.  The Overlease is attached as **Exhibit C**.

16.     The Sublease provides that Plaintiff subleases the Premises on the same terms and conditions as stated in the Overlease.

## VIII.   THE LICENSE AGREEMENT WITH HIG MANAGEMENT

17.     On or around September 24, 2014, Plaintiff entered into a License Agreement (the "License Agreement") with HIG Management.  The License Agreement is attached as **Exhibit D**.  The License Agreement provided that, among other things, that during the term of the Sublease, Plaintiff was granted the right to use the trademarks, logos, copyrights, and "the associated know-how in the operation" of the business in exchange for a license fee equal to $1,200.00 a month for five years and $1,500.00 a month for the remainder of the ten year term.

## IX.   PLAINTIFF PAYS $100,000.00 TO LV DNS

18.     On or around September 29, 2014, Plaintiff paid the $100,000.00 required under the Payment Schedule to LV DNS.

## X.   PLAINTIFF DISCOVERS THAT DEFENDANTS USED PLAINTIFF'S $160,000.00 TO BUILD THE RESTAURANT FOR THEIR OWN BENEFIT

19.     On or around January 22, 2015, Sam Chen informed Plaintiff that Defendants would take possession of the Premises on or around June 1, 2015 and that the Restaurant would be ready for Plaintiff on or around August 1, 2015.

20.     Shortly thereafter, Plaintiff emailed Sam Chen asking when the final payment of $155,000.00 was due.  Sam Chen did not respond to that email, as well as other of Plaintiff's emails sent on and after January 24, 2015.  The first email received by Plaintiff from Sam Chen

First Amended Complaint for Damages - 8

Harbor Law PLLC
119 Union Avenue, Suite B
Snohomish, WA 98290
Phone: 425-332-2046
Fax: 425-321-0344

after January 24, 2015 was on June 3, 2015, in which Sam Chen informed Plaintiff that David Wu was going to be Plaintiff's point of contact going forward.

21.     Starting in June 2015, Plaintiff visited the Premises and saw that construction of the Restaurant was taking place as scheduled.

22.     On or around August 5, 2015, Plaintiff visited the Premises and saw that the Restaurant was already in operation and open for business.

23.     When Plaintiff approached David Wu regarding why someone other than Plaintiff was operating the Restaurant, David Wu informed Plaintiff that he had promised the Restaurant to another franchisee and that the double-commitment was inadvertent.

24.     Despite numerous demands by Plaintiff, Defendants have refused to turnover the Restaurant and Plaintiff's $160,000.00.

## FIRST CAUSE OF ACTION – VIOLATION OF WASHINGTON FRANCHISE INVESTMENT PROTECTION ACT AGAINST ALL DEFENDANTS

25.     Plaintiff realleges Paragraphs 1-24, inclusive, as though fully set forth herein.

26.     The Restaurant is a franchise pursuant to RCW 19.100.010(6), and is subject to the Washington Franchise Investment Act, RCW 19.100.010 et seq.

27.     Defendants are "franchisors" as defined by RCW 19.100.010(10) and (13).

28.     Plaintiff is a "franchisee" as defined in RCW 19.100.010(9).

29.     Through their acts and omissions, Defendants have committed multiple violations of RCW 19.100.010 et seq.

30.     Defendants are franchisors doing business in the State of Washington and have offered to sell and have sold at least one franchise in the State of Washington.

First Amended Complaint for Damages - 9

31.     In violation of RCW 19.100.020, Defendants have not registered with the State of Washington as franchisors, did not register the offer or the sale of the Restaurant, and are not exempt from doing so.

32.     In violation of RCW 19.100.080, Defendants failed to furnish Plaintiff with a copy of the franchisor's current disclosure documents, as described in RCW 19.100.040 and 19.100.070.

33.     In violation of RCW 19.100.170(2), Defendants offered to sell and did sell the Restaurant by means of written and oral communications that included untrue statements of material facts and omitted to state material facts.  The untrue statements include, but are not limited to, that Defendants would deliver possession of the Restaurant to Plaintiff after the Restaurant was built.

34.     In violation of RCW 19.100.170(3), Defendants employed a device, scheme or artifice to defraud by inducing Plaintiff to pay Defendants $160,000.00 to, among other things, finance the construction and development of the Restaurant, and keeping the Restaurant for their own benefit.

35.     In violation of RCW 19.100.170(4), Defendants engaged in an act, practice or course of business that operates as a fraud or deceit upon Plaintiff.

36.     In violation of RCW 19.100.180(1), Defendants failed to deal with Plaintiff in good faith.

37.     In violation of RCW 19.100.180(2)(c), Defendants discriminated between franchisees by placing another franchisee in the Restaurant despite Plaintiff's contractual right to the Restaurant.

38.     In violation of RCW 19.100.180(2)(d), the purchase price paid by Plaintiff was unreasonably high considering nothing of value was given in exchange.

Harbor Law PLLC
119 Union Avenue, Suite B
Snohomish, WA 98290
Phone: 425-332-2046
Fax: 425-321-0344

39.     As a direct and proximate result of Defendants' violations of RCW 19.100.010 *et seq.*, Plaintiff sustained damages as set forth in this complaint.

40.     Because of Defendants' violations of RCW 19.100.010 *et seq.*, Plaintiff is entitled to remedies under RCW 19.100.190 in addition to the remedies available at common law.

## SECOND CAUSE OF ACTION – VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT AGAINST ALL DEFENDANTS

41.     Plaintiff realleges paragraphs 1 through 40, inclusive, and 65 through 72, inclusive as though fully set forth herein.

42.     Defendants: (a) failed to deal with Plaintiff in good faith; (b) discriminated between franchisees; (c) offered to sell and did sell to Plaintiff products and services for more than a fair and reasonable price; and (d) terminated a franchise prior to the expiration of its term without good cause.  Each of these acts is an unfair or deceptive act or practice or an unfair method of competition and constitutes an unfair or deceptive act or practice that is a *per se* violation of the Washington Consumer Protection Act, RCW 19.86. *et seq.*, in accordance with RCW 19.100.190.

43.     Defendants willfully and knowingly engaged in these unlawful and deceptive practices, and as a direct and proximate result of Defendants' violation of RCW 19.100.180, 19.100.190, and RCW 19.86. *et seq.*, Plaintiff has been damaged in an amount of at least $4,251,890.07, plus interest, fees, attorney's fees, and other charges that continue to accrue.  In addition, pursuant to RCW 19.86.090 and 19.100.190(3), Plaintiff may be entitled to recover treble damages and its attorneys' fees and costs incurred herein.

First Amended Complaint for Damages
- 11

Harbor Law PLLC
119 Union Avenue, Suite B
Snohomish, WA 98290
Phone: 425-332-2046
Fax: 425-321-0344

1

## THIRD CAUSE OF ACTION – BREACH OF CONTRACT (PURCHASE

2

## AGREEMENT) AGAINST ALL DEFENDANTS

3      44.     Plaintiff realleges paragraphs 1 through 43, inclusive, as though fully set forth

4  herein.

5      45.     Plaintiff entered into the Purchase Agreement with David Wu, Sam Chen, HIG

6  Management, and LT Real Estate for good and valuable consideration.

7      46.     Among other things, under the Purchase Agreement, David Wu, Sam Chen,

8  HIG Management, and LT Real Estate agreed to deliver a turnkey Little Tokyo restaurant to

9  Plaintiff in exchange for a series of payments: (1) $60,000.00 due immediately; (2)

10  $100,000.00 due on signing of the Sublease and License Agreement; and (3) $155,000.00 due

11  upon David Wu, Sam Chen, HIG Management, and LT Real Estate obtaining a permit for

12  construction.

13      47.     Plaintiff performed by paying the first and second payments aggregating

14  $160,000.00 and offering to pay the final $155,000.00 payment.  David Wu, Sam Chen, HIG

15  Management, and LT Real Estate did not respond to Plaintiff's offer and ceased all

16  communications with Plaintiff, thus excusing Plaintiff from having to make the final payment.

17      48.     David Wu, Sam Chen, HIG Management, and LT Real Estate breached the

18  Purchase Agreement by failing to deliver the Little Tokyo restaurant to Plaintiff. David Wu,

19  Sam Chen, HIG Management, and LT Real Estate instead used Plaintiff's funds of

20  $160,000.00 to finance the construction of the restaurant, which they retained for their own

21  benefit.

22      49.     All of the Defendants, as alter egos of each other, are liable for each other's

23  obligations, including those under the Purchase Agreement.

24

25

First Amended Complaint for Damages
- 12

Harbor Law PLLC
119 Union Avenue, Suite B
Snohomish, WA 98290
Phone: 425-332-2046
Fax: 425-321-0344

50.     As a result of Defendants' breach of the Purchase Agreement, Plaintiff has been damaged in an amount of at least $4,251,890.07, plus interest, fees, attorney's fees, and other charges that continue to accrue.

## FOURTH CAUSE OF ACTION – BREACH OF CONTRACT (SUBLEASE) AGAINST ALL DEFENDANTS

51.     Plaintiff realleges paragraphs 1 through 50, inclusive, as though fully set forth herein.

52.     Plaintiff and LT Real Estate entered into the Sublease for good and valuable consideration.

53.     Among other things, under the Sublease, LT Real Estate agreed to sublease the Premises to Plaintiff under the same terms as the Overlease.

54.     Plaintiff performed all of its obligations under the Sublease.

55.     LT Real Estate breached the Sublease by failing to deliver possession of the premises to Plaintiff and to provide Plaintiff the same rights that LT Real Estate received under the Overlease.

56.     All of the Defendants, as alter egos of each other, are liable for each other's obligations, including those under the Sublease.

57.     As a result of Defendants' breach of the Sublease, Plaintiff has been damaged in an amount of at least $4,251,890.07, plus interest, fees, attorney's fees, and other charges that continue to accrue.

## FIFTH CAUSE OF ACTION – BREACH OF CONTRACT (LICENSE AGREEMENT) AGAINST ALL DEFENDANTS

58.     Plaintiff realleges paragraphs 1 through 57, inclusive, as though fully set forth herein.

First Amended Complaint for Damages - 13

Harbor Law PLLC
119 Union Avenue, Suite B
Snohomish, WA 98290
Phone: 425-332-2046
Fax: 425-321-0344

59.     Plaintiff and HIG Management entered into the License Agreement for good and valuable consideration.

60.     Among other things, under the License Agreement, HIG Management granted Plaintiff the right to use, during the length of the term of the Sublease, the trademarks, logos, copyrights, and "the associated know-how in the operation" of the business.

61.     Plaintiff performed all of its obligations under the License Agreement.

62.     HIG Management breached the License Agreement by prohibiting Plaintiff from exercising its right to use the trademarks, logos, copyrights, and the "associated know-how," by failing to turnover the Restaurant to Plaintiff and retaining it for their own benefit.

63.     All of the Defendants, as alter egos of each other, are liable for each other's obligations, including those under the License Agreement.

64.     As a result of Defendants' breach of the License Agreement, Plaintiff has been damaged in an amount of at least $4,251,890.07, plus interest, fees, attorney's fees, and other charges that continue to accrue.

## SIXTH CAUSE OF ACTION – FRAUD AGAINST ALL DEFENDANTS

65.     Plaintiff realleges paragraphs 1 through 64, inclusive, as though fully set forth herein.

66.     Beginning in around March 2014, David Wu and Sam Chen, on behalf of themselves and the other Defendants, represented to Plaintiff that Defendants intended to franchise the Restaurant and sublease the Premises to Plaintiff.

67.     These representations were false and known to be false by Defendants at the time they were made.

First Amended Complaint for Damages - 14

Harbor Law PLLC
119 Union Avenue, Suite B
Snohomish, WA 98290
Phone: 425-332-2046
Fax: 425-321-0344

68.     In fact, Defendants never intended to franchise the Restaurant or sublease the Premises to Plaintiff, and instead intended to use Plaintiff's money to fund the development of the Restaurant for their own benefit.

69.     Plaintiff was ignorant of the falsity of the representations and believed them to be true.  Plaintiff did not discover the falsity of the representations until August 5, 2015 when Plaintiff visited the Restaurant and saw that it was already in operation and was open for business.

70.     Plaintiff relied upon the representations, and was induced by Defendants to make a $60,000.00 payment to Defendants on July 18, 2014 and another $100,000.00 payment to Defendants on September 29, 2014.

71.     Plaintiff's reliance on Defendants' representations was reasonable and justified because Plaintiff knew that David Wu owned numerous restaurant chains that he franchised throughout the country and Plaintiff was personally familiar with one of David Wu's franchisees.

72.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been defrauded and deceived, and has suffered damages in the amount of at least $4,251,890.07, plus interest, fees, attorney's fees, and other charges that continue to accrue.

## PRAYER FOR RELIEF

WHEREFORE having fully set forth its claims against Defendants, Plaintiff prays for relief as follows:

A.     For judgment against Defendants holding Defendants jointly and severally liable for violations of the Washington Franchise Investment Protection Act and awarding Plaintiff's damages estimated to be at least $4,251,890.07, as proven at trial, treble damages, and costs pursuant to statute;

First Amended Complaint for Damages - 15

Harbor Law PLLC
119 Union Avenue, Suite B
Snohomish, WA 98290
Phone: 425-332-2046
Fax: 425-321-0344

B.   For judgment against Defendants holding Defendants jointly and severally liable for violations of the Washington Consumer Protection Act and awarding Plaintiff's damages estimated to be at least $4,251,890.07, as proven at trial, treble damages, and costs pursuant to statute;

C.   For judgment against Defendants holding Defendants jointly and severally liable for breach of contract in an amount sufficient to compensate Plaintiff for the damages suffered as a result of Defendants' wrongdoing;

D.   For judgment against Defendants holding Defendants jointly and severally liable for fraud in an amount sufficient to compensate Plaintiff for the damages suffered as a result of Defendants' wrongdoing;

E.   For recovery against Defendants jointly and severally for prejudgment interest on all liquidated amounts as allowed by law;

F.   For recovery against Defendants jointly and severally for Plaintiff's reasonable costs and attorney's fees incurred herein, pursuant to contract and all applicable statutory, common law and equitable theories; and

G.   For such other and further relief as the Court deems just and equitable.

**DATED** this 14th day of December, 2015.

Respectfully submitted,

HARBOR LAW PLLC

Angie S. Lee, WSBA No. 47104
Attorney for Plaintiff MEGA SEATTLE, LLC

First Amended Complaint for Damages
- 16

# EXHIBIT A

# HIG MANAGEMENT, LLC

3421 N. Lakeview Dr., Tampa, FL 33618
Tel: (813)265-3955  Fax: (813)265-3428

**Payment Schedule**

July 15, 2014

Dear Mandy,

Upon our prior agreement, below are the summary of the payment schedule:

Operator : Mandy

Premises: Unit No. 0381C, containing approximately 655 square feet of floor area known as

Little Tokyo of Seattle Premium Outlets located in Tulalip, WA. ("Shopping Center")

Payment Schedule :

Total amount of payment: **$315,000.00**

1. **$60,000.00** security deposit due immediately.

2. **$100,000.00** due on the completion of Sublease & License agreements.

3. **$155,000.00** due upon obtaining Permit for Construction .

4.

In the event of if Sublandlord fails to execute Subelease Agreement, License Agreement or

Lease Agreement before December 31, 2014, security deposit of $60,000.00 will be refunded to

the operator.

# EXHIBIT B

## SUBLEASE AGREEMENT

THIS SUBLEASE AGREEMENT ("Sublease") is made and entered into on this 24th day of ___September___ , 2014 by and between **LT REAL ESTATE GROUP, LLC, a** <u>Nevada</u> **Limited Liability Company** (hereinafter the "Sublandlord"), **MEGA SEATTLE, LLC, a** <u>Washington</u> **Limited Liability Company**(hereinafter the "Subtenant").

WITNESSETH:

Sublandlord did enter into a certain Lease Agreement with the Landlord of Seattle Premium Outlets (the "Overlease"). A copy the Overlease, is attached hereto as Exhibit A

The Subtenant herein does hereby sublease the premises, **space 0381C**, consisting of approximately **655** rentable square feet known as **Little Tokyo** of **Seattle Premium Outlets** (the "Sublease Premises"), on exactly the same terms and conditions stated in the Overlease, as may be amended, with the following exceptions, to wit:

1. <u>Overlease.</u> The rights of Subtenant under this Sublease are subject and subordinate in all respects to the Overlease, as may be amended. The provisions of the Overlease, as may be amended (including any provisions in the Overlease, as may be amended, that are incorporated by reference from other documents) are incorporated by reference in this Sublease with the same effect as if they were set forth in this Sublease.

Subtenant shall use the premises in accordance with the provisions of the Overlease, as may be amended. Except as otherwise provided in this Sublease, Subtenant shall perform and satisfy all the covenants and conditions of "Tenant" under the Overlease, as may be amended and shall not do or suffer anything that constitutes a "Default" under the Overlease, as may be amended. Sublandlord grants to Subtenant all rights and privileges granted to "Tenant" under the Overlease, as may be amended. Sublandlord does not purport to grant to Subtenant any better rights or remedies under the Overlease, as may be amended, than are possessed by Sublandlord, and Sublandlord is not obligated to compel Landlord to perform any of its obligations under the Overlease, as may be amended.

2. <u>Commencement</u> The Sublease term shall commence upon the full execution of this Agreement. The Sublease term shall expire upon the expiration of the Overlease, as may be amended.

3. <u>Rent.</u> The Subtenant shall promptly pay directly to the Landlord as rent for the Subleased Premises all rental payments required by the Overlease, as may be amended.

4. <u>Notices.</u> The Subtenant shall pay the rent and shall forward all notices to Landlord at the address indicated on the rent statement (or such other place as Sublandlord may hereafter designate in writing).

with copy of all notices and proof of payment to:

Page 1 of 5
9/24/2014

Initial: Sublandlord _____

Subtenant _____

**LT REAL ESTATE GROUP, LLC**
**10175 W Twain Ave, Suite 130**
**Las Vegas, NV 89147**
**Attention: Legal**

The Sublandlord shall forward all notices to Subtenant at the following address (or at such other place as Subtenant may hereafter designate in writing):

(a) Any notice by either party to the other shall be valid only if in writing and shall be deemed to be duly given only if delivered personally or sent by registered or certified, postage prepaid, mail addressed (i) if to Subtenant, at:

**MEGA SEATTLE, LLC**
**2419 137th Ave SE**
**Bellevue, WA 98005**

and (ii) if to Sublandlord, at Sublandlord's address as set forth above, or at such other address for either party as that party may designate by notice to the other; notice shall be deemed given, if delivered personally, upon delivery thereof, or if mailed upon the posting thereof.

(b) Subtenant hereby appoints as its agent to receive service of all dispossessory or distraint proceedings, the person in charge of the Subleased Premises at the time of occupying the Subleased Premises; and if there is no person occupying same, then such service may be made by attachment thereof on the main entrance of the Subleased Premises.

Notwithstanding the changes in the name and place of notice, all of the other provisions and conditions contained in the Overlease, as may be amended, described above shall remain in full force and effect.

5. <u>Assignment.</u> Subtenant shall not assign, sublease, transfer, pledge or encumber this Sublease or any interest therein without the prior written consent of Sublandlord which consent shall not be unreasonably withheld and any attempted assignment, sublease or other transfer or encumbrance by Sublease shall be in violation of the terms and conditions of this Sublease. The sale or transfer of stock during the term hereof constituting a majority interest in Subtenant shall be considered for the purpose of this Sublease to be an assignment, and likewise shall require Sublandlord's prior written consent. Any attempted transfer, assignment, subletting license or concession agreement, hypothecation or other transfer herein that is prohibited without Sublandlord's prior written consent shall be void and confer no rights upon any third party.

6. <u>Warranties and Representations.</u> Subtenant shall lease the premises in "AS IS, WHERE IS" condition and without any warranties or representations whatsoever either expressed or implied. Subtenant shall not make any alterations to the Subleased Premises without the prior written consent of Sublandlord which consent may not unreasonably be withheld by Sublandlord; provided, however, any such alterations must first be approved by Landlord. Upon expiration of the term, Subtenant shall leave the premises in good condition, normal wear and tear excepted.

Page 2 of 5
9/24/2014

Initial: Sublandlord _____

Subtenant _____

7. Indemnity. Subtenant shall indemnify and hold harmless Sublandlord and Landlord from all costs, loss, expenses or liability incurred by Sublandlord in connection with its sublease to Subtenant of the Subleased Premises or otherwise arising from Subtenant' use of Sublandlord and Landlord's property or any portion of the Subleased Premises. Without limitation, indemnified losses shall include Sublandlord's loss of all or part of its security deposit under the Overlease, as may be amended, and any other expense or liability incurred by Sublandlord as a result of a default under the Sublease that is caused by any act or omission of the Subtenant. Subtenant shall fully reimburse Sublandlord and Landlord for any indemnified loss within thirty (30) days following the date Sublandlord or Landlord gives Subtenant notice of the loss that contains a description of the date, amount, and cause of the loss. Subtenant shall make all indemnity payments to Sublandlord at its addresses set forth in Section 4 of this Sublease or such other address or addresses as Subtenant may designate in its notice to Sublandlord. The Subtenant's indemnity obligation under this Sublease is absolute and not subject to any setoff, defense, deduction, or counterclaim based on a claim that Subtenant may have against Sublandlord. The obligation of Subtenant under this section will survive the expiration or termination                          of                              this                              Sublease.

8. Fixtures and Personal Property. Any trade fixtures, signs and other personal property of Subtenant not permanently affixed to the Leased Premises shall remain the property of the Subtenant and Sublandlord agrees that Subtenant shall have the right, provided that Subtenant is not in default under the terms of this Sublease, at any time, and from time to time to remove any and all of its trade fixtures, signs and other personal property, which it may have stored or placed in the Leased Premises.

To secure payment of the rental, and all other sums due or to become due under the Sublease and the performance of the Subtenant's other obligations hereunder, Subtenant hereby grants to Sublandlord an expressed contract lien on and security interest in all equipment, inventory, fixtures, goods and other personal property which my be placed in or on the Leased Premises, and all proceeds thereof. The lien and security are given in addition to and not lieu of Sublandlord's statutory lien and shall be cumulative thereto. To the extent permitted by law, this lien and security interest may be foreclosed with or without court proceedings, by public sale, with reasonable notice, and Landlord shall have the right to become purchaser of any such sale upon being the highest bidder.

Upon request of Sublandlord, Subtenant shall execute Uniform Commercial Code Financial Statements relating to the aforesaid security interest.

9. Default. Any breach of any covenant, obligation, or representation by a party under this Sublease, or any "Default" described in the Overlease, as may be amended, constitutes a default under this Sublease. Upon the occurrence of a "Default" as defined under the Overlease, as may be amended, Sublandlord shall have all the rights and remedies of Landlord under the Overlease, as may be amended. Additionally, any breach by Subtenant of any covenant, condition or obligation set forth in this Sublease that is not cured in the event of a monetary default within five (5) days and in the event of a non-monetary default within twenty (20) days after Subtenant receives from Sublandlord written notice of the breach will constitute a default hereunder. Upon the occurrence of a default by Subtenant, and upon expiration of the applicable

Page 3 of 5
9/24/2014

Initial: Sublandlord ____

Subtenant ____

curative period without having cured the default Sublandlord may elect to exercise any one of the following remedies, without prior notice or demand:

(a) Sublandlord may re-let the Premises for and on behalf of Subtenant and apply all rent received against the Rent payable by Subtenant under this Sublease for the balance of its stated term, without any obligation to account to Subtenant for any excess rent received, and Sublandlord may sue to recover any damage, deficiency, or loss of rent suffered by Sublandlord because of its reentry and re-letting of the Premises; or

(b) Sublandlord may terminate this Sublease and sue Subtenant to recover all unpaid Rent through the effective date of the termination, but the parties otherwise will not have any further rights or obligations under this Sublease; or

(c) Sublandlord, monthly or at such longer intervals as it elects, may sue Subtenant to recover any accrued, unpaid Rent without any obligation to wait until the end of the stated term of this sublease for a final determination of Subtenant's account.

The rights given to Sublandlord herein are in addition to any rights that may be given to Sublandlord by a statute or under law. Pursuit of any of the foregoing, remedies shall not preclude pursuit of any of the other remedies herein provided or other remedies provided by law. If any provision of this Sublease, or its application to any situation shall be invalid or unenforceable to any extent, the remainder of this Sublease, or the application thereof to situations other than that as to which it is invalid or unenforceable, shall be affected thereby, and every provision of this Sublease shall be valid and enforceable to the fullest extent permitted by law.

10. <u>Insurance.</u> During the term of the Sublease, Subtenant shall maintain at its expense and for the mutual benefit of Sublandlord and Subtenant "extended coverage" casualty insurance and liability insurance on the Subleased Premises pursuant to Section J of the Overlease, as may be amended.

11. <u>Attorney's Fees.</u> If any rent or other charges due pursuant to the terms of this Sublease are collected by or through an attorney at law, Subtenant shall pay all attorney's fees incurred by Sublandlord as a result of any breach or default by Subtenant under this Sublease.

12. <u>Joint and Several Liability.</u> If more than one party shall execute this Agreement, the term "Subtenant" shall mean all parties signing the Sublease, who shall be jointly and severally obligated hereunder.

12. <u>Miscellaneous.</u> Notwithstanding the foregoing change in the improvements, all of the other provisions and conditions contained in the Overlease, as may be amended, described above shall remain in full force and effect.

13.<u>Time of Essence.</u> Time is of the essence of this Sublease.

Page 4 of 5
9/24/2014

Initial: Sublandlord _____

Subtenant _____

IN WITNESS WHEREOF, Sublandlord and Subtenant have executed this Sublease
Agreement dated as of the date set forth above

**SUBLANDLORD:**

**LT REAL ESTATE GROUP, LLC**

By: _____

Title: _____Member_____

**SUBTENANT:**

**MEGA SEATTLE, LLC**

By: _____

Title: _____owner_____

Page 5 of 5
9/24/2014

Initial: Sublandlord _____

Subtenant _____